**SO ORDERED**

NO TIMELY OPPOSITION.



**NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

In re:

MICHAEL A. HAYNIE                                      Case No.: 17-13842-NVA

    Debtor.                                                     (Chapter 7)
_____/

### ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B), (F), AND (M)

UPON CONSIDERATION of the *Motion To Sell Real Property Free And Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(b), (f), and (m)* (the "Sale Motion"), by which Zvi Guttman, Chapter 7 trustee ("the Trustee") for the above-referenced debtor ("Debtor"), seeks authority to sell, free and clear of all liens, encumbrances, and interests, certain real property owned by Debtor, commonly known as 8118 Meadowgate Circle, Glen Burnie, MD 21060, and more particularly described as:

> All that certain property situated in the county of Anne Arundel, and state of MD and being described in a deed dated 04/07/2015 and recorded 04/14/2015 in Book / Page:28260 / 270 among the land records of the county and state set forth above, and referenced as follows:
>
> LOT 9 AS SHOWN AND SET OUT ON PLATS ENTITLED "AMENDED PLATS 1 THROUGH 12 OF 12 CREEKSIDE VILLAGE AT TANYARD COVE - RESIDENTIAL SECTION 1" RECORDED AMONG THE LAND RECORDS OF

ANNE ARUNDEL COUNTY, MARYLAND IN PLAT BOOK 320, PAGES 17 THROUGH 28, PLAT NOS. 16543 THROUGH 16554.
Parcel ID(s): 03-246-90236890
(the "Property")

Based on the Sale Motion, the record, and for good cause shown, the Court finds that (a) sale of the Property on the terms contained in the Sale Motion is in the best interests of the Debtor's estate, (b) notice of the Sale Motion was proper and adequate, and (c) no objections were timely filed.

NOW, THEREFORE, it is by the United States Bankruptcy Court for the District of Maryland --

**ORDERED**

1. The relief requested in the Sale Motion is **GRANTED** and the sale of the Property by the Trustee pursuant to 363(b), (f) and (m) free and clear of all liens, claims, encumbrances, and interests, by auction, using the services of Auction.com ("ADC"), is hereby **APPROVED**, subject to the terms and conditions herein.

2. The Trustee is authorized to take any and all actions and to execute any and all documents necessary and appropriate to effectuate and consummate the terms of said sale of the Property, including without limitation, executing a deed conveying the interests of the Debtor and any other party claiming an interest in the Property to the auction purchaser (hereinafter, the "Buyer").

3. The creation and use by Trustee of a Carve-Out Fund, as defined and described below, is hereby approved.

4. ADC may take any actions necessary to facilitate the sale of the property, including but not limited to: marketing the Property itself or via a Listing Agent (as that term is defined in the Sale Motion), and conducting the auction of the Property using the following procedures:

   a. **The Auction Date**:  The first "Auction Date" shall not be set until entry of an order by the Bankruptcy Court approving the Motion to Sell. The first "Auction Date" shall be a date selected by ADC that is at least 21 days following the entry of an order by the Bankruptcy Court approving the retention of ADC; provided however that the Auction Date may be adjourned from time to time by posting a notice of adjournment on ADC's website.

    b.    **Registration Process**:  Each party wishing to participate in the Auction shall submit an on-line registration form on the website established by ADC for the Auction to qualify as a bidder.  The registration form shall, among other things: (i) contain such information as reasonably requested by ADC to identify the potential bidder; and (ii) require a credit card authorization for payment of a deposit (in an amount to be determined by ADC in consultation with the Trustee), which deposit will either (a) <u>not</u> be charged, if the bidder is not the winning bidder, (b) <u>not</u> be charged, if the bidder is the winning bidder and timely consummates the sale pursuant to the Sale Documents, or (c) may <u>be charged</u>, if the bidder is the winning bidder but fails to timely consummate the sale, including fails to execute the Sale Documents promptly following completion of the Auction.  The Secured Creditor shall be deemed to be a qualified bidder at the Auction and shall not be required to submit a registration form or deposit.  ADC, in consultation with the Trustee, shall have the right to disqualify any potential bidder as a qualified bidder if such bidder fails to complete the registration process.

    c.    **Bid Procedure**:  Prior to the commencement of the first Auction Date, the Secured Creditor shall provide a written notice (the "Secured Creditor Notice") to the Trustee and ADC of the amount of its credit bid pursuant to Section 363(k) of the Bankruptcy Code.  The Secured Creditor Notice shall also include the following information: (i) a minimum purchase price for the sale of the Property acceptable to the Secured Creditor (the "Reserve Price"); (ii) the Secured Creditor's initial credit bid amount to serve as the opening bid for the Auction (the "Opening Bid"), which may be less than the Reserve Price; and (iii) the bidding increment(s) ("Bidding Increments") for each round of bidding after the Opening Bid.[1]  The Bidding Increments may be adjusted upwards or downwards during the Auction for each bidding round in the discretion of ADC to facilitate the most competitive bidding.  The Secured Creditor Notice shall be the sole authorization required by the Trustee and ADC to consider the submission of the Opening Bid and any competing bid(s) by the Secured Creditor pursuant to Section 363(k) of the Bankruptcy Code.[2]

    d.    **Winning Bid Amount**:  The "Winning Bid Amount" shall be the highest or otherwise best bid selected by the Trustee and ADC, consistent with the Secured Creditor Notice, during the Auction.

---

[1] If not otherwise set forth in the Secured Creditor Notice, the Reserve Price, the Opening Bid, and the initial Bidding Increments may be established by ADC in consultation with the Trustee and the Secured Creditor; <u>provided however,</u> that ADC may adjust Bidding Increments upwards or downwards during the Auction in its discretion.

[2] Without limiting the foregoing, ADC shall be authorized to increase Bidding Increments automatically during the Auction on behalf of the Secured Creditor to the extent of the authorization provided for in the Secured Creditor Notice.

3

e. **Buyer's Premium**: In addition to the Winning Bid Amount, the winning bidder shall pay a "Buyer's Premium" equal to the greater of $2,500.00 or five (5%) of the Winning Bid Amount, which shall be paid at closing directly to ADC as its commission (the "Buyer's Premium"). ADC shall not be entitled to any other compensation. No Buyer's Premium shall be paid when the highest bid is the Secured Creditor's credit bid. ADC shall not split or otherwise share the Buyer's Premium with any other person or entity. The estate shall not be responsible or obligated to pay any compensation to ADC.

f. **Total Purchase Price:** The actual total purchase price ("Total Purchase Price") at closing will be equal to the Winning Bid Amount plus the Buyer's Premium.

g. **Listing Agent's Commission**: The Listing Agent shall receive up to 3% of the Winning Bid Amount for any sale that closes to a third party buyer (the "Commission"). No Commission shall be paid when the highest bid is the Secured Creditor's credit bid. The Listing Agent shall not be entitled to any other compensation. The Listing Agent shall not split or otherwise share the Commission with any other person or entity, except that if the buyer is represented by a real estate agent, the Listing Agent and buyer's real estate agent may split or share the Commission by agreement. The Secured Creditor agrees to pay the Commission when earned and the estate shall not be responsible or obligated to pay any compensation to the Listing Agent.

h. **Carve-Out Fund**: In order to provide for the payment of expenses in this Chapter 7 case and to afford general unsecured creditors an opportunity to participate in any recovery from the sale of the Property, the Secured Creditor has agreed that (1) if the Winning Bid Amount is less than the allowed amounts owing to the Secured Creditor, then the Trustee will receive (a) 5% of the Winning Bid Amount plus the Listing Agent's Commission, or (b) 5% of the Reserve, in the event the Secured Creditor enters the winning bid (collectively, the "Standard Carve-Out"); provided however that the Standard Carve-Out shall never be less than $7,500.00, exclusive of the Listing Agent's Commission, nor shall it exceed $50,000.00, exclusive of the Listing Agent's Commission; (2) if the Winning Bid Amount exceeds the amounts owing to the Secured Creditor, then the portion which exceeds the amounts owing to the Secured Creditor and any valid and substantiated junior secured lienholder (the "Surplus") shall be retained by the Trustee and no carve-out shall be paid; however, if the Surplus is less than the Standard Carve-Out set out above by any amount ("Short Surplus Amount") then the Secured Creditor consents to paying the Trustee an amount equal to the Short Surplus Amount; and (3) the Trustee shall be reimbursed by the Secured Creditor for any liability insurance expenses incurred by the Trustee.

4

      i.    **Back-Up Bidder**: ADC shall be authorized, but not required, to accept the second highest bid submitted during the Auction as a "back-up" bid in the event that the winning bidder fails to consummate the sale transaction.

      j.    **Sale Documents**: Promptly following the closing of the Auction, the winning bidder shall execute a sale agreement or other applicable sale documents as required by the Trustee (the "Sale Documents").

5.    The Trustee's acceptance of a "back-up" bid and proceeding to consummate a transaction with the "back-up" bidder shall be without prejudice to any claim of the Trustee against the winning bidder for failing to proceed.

6.    If the reserve is not met by the end of the first Auction, then ADC will advertise a second Auction to commence one week later. If the reserve price is not met at the second Auction, ADC will advertise and commence a third Auction one week later. If the reserve price is not met at the third Auction, the Secured Creditor may then utilize its right to purchase the Property by credit bid.

7.    To the extent applicable in any sale, the Secured Creditor agrees to pay at closing (1) all outstanding real estate taxes, including any prorated amounts due for the current tax year; (2) if applicable, the lesser of any HOA fees accrued post-petition or the equivalent to twelve months' assessments; the Carve-Out and ADC's and the Listing Agent's Commission as provided in the Marketing Agreement (4) all closing costs excluding professional fees. Any payments by the Secured Creditor as stated herein shall be subject to any and all limitations on the Secured Creditor's liability for any fees and costs under applicable law.

8.    The Trustee is authorized to disburse from the proceeds of sale at or after settlement, directly or through an intermediary, including a title company:

    a.    any transfer or recordation fees and stamps and costs of sale (if any) which are chargeable to the estate under and pursuant to the terms of the Contract;

    b.    the principal and interest and other allowable charges and amounts due to the Secured Creditor and any person if and to the extent the Trustee concludes that such person holds an interest or claim secured by a non-avoidable, non-subordinated, valid and perfected interest or lien on the Property;

    c.    The compensation and reimbursement of expenses pursuant to the order authorizing the engagement of ADC and the Listing Agent; and;

        d.      the estate's share of secured, administrative or priority real property taxes, water/ sewage charges, ground rent and condominium/HOA fees and assessments due (if any) as of the date of closing.

    9.      All proceeds of sale not disbursed at the direction of the Trustee as authorized herein shall be turned over to and retained by the Trustee, in escrow, for disbursement in accordance with the Bankruptcy Code and/or further Order of this Court.

    10.      If and to the extent any creditor (other than the Secured Creditor) asserts an interest or secured claim against the Property, such creditor is deemed to have consented to entry of this Order, and unless the gross proceeds of sale exceed the amount of the Secured Creditor's claim, such creditor's claim shall not be a secured claim. To the extent any creditor asserts a claim against the Property (i.e., junior lienholders), such creditor shall be entitled to file a proof of claim pursuant to F.R.B.P. Rule 3002(c)(3).

    11.      Solarcity shall have 21 days from the date of the entry of this Order in which to remove its collateral from the Property or make arrangements with the Buyer to retain it. Thereafter Solarcity shall refrain from entering upon the Property or removing its collateral. If Solarcity decides to timely remove its collateral, any such removal shall be done with prior notice to the Trustee and in a workmanlike manner. Solarcity shall be responsible to reimburse the Trustee or the Buyer for any damage or waste caused to the Property by its collateral or its removal.

    12.      Except as provided in the Sale Documents, upon the Closing Date the Property shall be transferred to the Buyer free and clear of all encumbrances arising prior to the Closing Date or arising from or relating to acts occurring prior to the Closing Date, and any such substantiated interest, claims, liens or encumbrances, if any, shall be deemed general unsecured claims.

    13.      If any person or entity that has (a) filed (i) a mortgage or deed of trust, (ii) financing statement (iii) or other documents or agreements, or (b) obtained a judgment, thereby evidencing an interest, claim, lien or encumbrance on the Property, does not timely deliver to the Trustee prior to the Closing Date—in proper form for filing and executed by the appropriate parties—termination statements, instruments of satisfaction, and/or releases of all encumbrances which the person or entity has with respect to the Property, the Trustee and the Buyer are each hereby authorized to execute and file such statements, instruments, releases and other documents

on behalf of the person or entity with respect to the Property. The foregoing notwithstanding, the provisions of this Order authorizing the sale and assignment of the Property free and clear of encumbrances shall be self-executing, and notwithstanding the failure of the Buyer, the Trustee, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate and implement the provisions of this Order or the Sale Documents, respectively, all encumbrances on the Property shall be deemed divested, released and terminated.

       14.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

**Suggested Distribution List**

Zvi Guttman, Esq.
The Law Offices of Zvi Guttman, P.A.
Post Office Box 32308
Baltimore, Maryland 21282

Mary Albrecht-Jordan, Esq.
Law Offices of Mary A Jordan
14 Crain Highway SW
Glen Burnie, MD 21061

US Bank Home Mortgage
4801 Frederica Street
Owensboro, KY 42301

Douglas S. Rubin, Esq.
Samuel I. White P.C.
611 Rockville Pike, Suite 100
Rockville, MD 20852

Auction.com, LLC
Attn: Charlie Lee, EVP
1 Mauchly
Irvine, CA 92618

Shira Guttman
Keller Williams Legacy
1515 Reisterstown Rd
Baltimore, MD 21208

Office of the United States Trustee
101 West Lombard Street, Room 2625

Baltimore, MD 21201

Michael A. Haynie
Amanda L. Haynie
8118 Meadowgate Cir
Glen Burnie MD 21060

Solarcity Corporation
393 Vintage Park Drive, Suite 140
Foster City CA 94404

Solarcity Corporation
The Corporation Trust, Incorporated
2405 York Road, Suite 201
Lutherville MD 21093

**END OF ORDER**